UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Melissa Dumont, as Personal Representative
for the Estate of Robert Donald Hutt,

        Plaintiff,

        v.                            Civil Action No. 2:14-cv-209

Corrections Corporation of America,
Correct Care Solutions, LLC,
Michael E. Rapaport, and Mitchell Miller,

        Defendants.


**<u>REPORT AND RECOMMENDATION</u>**
(Doc. 83)

      Plaintiff Melissa Dumont, as Personal Representative for the Estate of Robert Donald

Hutt, brings this action under 42 U.S.C. § 1983 and Vermont tort law, alleging

unconstitutional and negligent conduct relating to Hutt's medical care while he was in the

custody of the Vermont Department of Corrections (DOC).  (Doc. 61.)  Pending before the

court is Defendant Corrections Corporation of America (CCA)'s Motion to Sever Claims

and Transfer Venue (Doc. 83), wherein CCA requests that the court sever Plaintiff's claims

against it and transfer those claims to the District of Arizona "where Plaintiff is suing

former Defendants [Keith] Ivens, [Teresa] Lanier, and [Iman] Gonzalez for the same events

out of which her claims against CCA arise" (*id.* at 1).  CCA claims that severance and

transfer "would serve the interests of justice and promote fairness and efficiency."  (*Id.* at 2.)

In support of its Motion, CCA provides a copy of the Complaint filed in the District of Arizona against Ivens, Lanier, and Gonzalez.  (Doc. 83-1.)  Plaintiff filed an opposition to CCA's Motion (Doc. 90), and CCA filed a responsive reply (Doc. 92).  For the reasons set forth below, I recommend that CCA's Motion to Sever Claims and Transfer Venue (Doc. 83) be GRANTED.

## **Factual Background**

Many of Plaintiff's factual allegations, which are alleged in Plaintiff's Second Amended Complaint (Doc. 61), were summarized in this Court's November 17, 2015 Report and Recommendation (Doc. 91).  Familiarity with that factual summary is presumed, but those allegations which are most relevant to the pending Motion are reviewed below.

DOC Commissioner Andrew Pallito contracted with CCA, a corporation that has its principal place of business in Nashville, Tennessee, to house inmates in CCA facilities outside of Vermont.  (Doc. 61 at 4, ¶ 5; 6, ¶ 14.)  The contract required CCA to "house, guard[,] and provide all necessary care for certain inmates under the care and custody of DOC."  (*Id.* at 6, ¶ 14.)  Hutt, a Vermont inmate, was imprisoned at a CCA facility in Florence, Arizona from 2010 until March 2014.  (*Id.* at 6, ¶ 15; 11, ¶ 41.)  During that period, CCA employed Keith Ivens, Iman Gonzalez, RN-BSN, and Theresa Lanier, MD, PhD, on the medical staff at the Florence, Arizona facility: Ivens as the "[R]egional [M]edical [D]irector," Gonzalez as the "Health Services Administrator," and Lanier as the "Medical Director."  (*Id.* at 4, ¶¶ 6–7; 5, ¶ 8.)  Each of these individuals was involved in Hutt's medical care at CCA's Florence, Arizona facility.  (*Id.* at 7, ¶ 20.)

2

While at the Arizona facility, Hutt experienced pain and eventually underwent surgery for a broken femur.  (*Id.* at 7, ¶ 20; 8, ¶¶ 22–26.)  In December 2013, Hutt was diagnosed with osteosarcoma.  (*Id.* at 8, ¶ 26.)  Plaintiff claims that Hutt received inadequate medical care while at CCA's Arizona facility.  (*Id.* at 11, ¶ 39.)

Plaintiff also names as a Defendant in this case Correct Care Solutions (CCS), a limited liability company with its "principal office" in Nashville, Tennessee.  (*Id.* at 5, ¶ 9.)  Commissioner Pallito had a contract with CCS "to provide comprehensive health care to Vermont inmates in Vermont."  (*Id.*)  During the relevant period, Dr. Michael Rapaport was CCS's "Regional Medical Director for Vermont" (*id.* at 5, ¶ 10), and Drs. Rapaport and Mitchell Miller, both employees of CCS, served as Hutt's physicians at the Southern State Correctional Facility in Springfield, Vermont (*id.* at 5, ¶¶ 10–11; 11, ¶ 41).  Plaintiff claims that, like CCA and its employees in Arizona, CCS and its employees failed to provide adequate medical care for Hutt in Vermont.  (*Id.* at 11–12.)

On October 27, 2014, Hutt died from osteosarcoma.  (*Id.* at 3, ¶ 3; 8, ¶ 23.)  He was residing with his sister at her residence in Windsor, Vermont at the time.  (*Id.* at 3–4, ¶ 4.)

## **Procedural Background**

On April 9, 2015, Plaintiff filed a Second Amended Complaint which named as Defendants CCA, Gonzalez, Ivens, Lanier, CCS, Rapaport, Miller, and Pallito.  (Doc. 61.)  Defendants Gonzalez, Ivens, and Lanier were subsequently dismissed from the suit for lack of personal jurisdiction.  (Docs. 63, 68.)

On September 25, 2015, CCA filed the pending Motion to Sever Claims and Transfer Venue (Doc. 83).  Plaintiff has since filed a Motion for Leave to Amend (Doc. 94) her complaint for the third time.  Plaintiff also has filed a § 1983 action in the District of Arizona against Gonzalez, Ivens, and Lanier.  (Doc. 83-1.)  In the District of Arizona, Plaintiff alleges that CCA employees violated Hutt's Eighth Amendment right to be free from cruel and unusual punishment and his right to equal protection under the Fourteenth Amendment.  The Arizona complaint includes state-law claims of negligence and medical malpractice.  (*Id.*)  CCA represents that it is defending and indemnifying Ivens, Lanier, and Gonzalez in relation to the pending action in the District of Arizona.  (Doc. 83 at 3 n.4.)

## I.    Motion to Sever Claims

Federal Rule of Civil Procedure 21 permits a court to "sever any claim against a party."  Fed. R. Civ. P. 21.  "The decision of whether to sever a claim is left to the discretion of the trial court."  *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (citing *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir.1988)).

> Courts in this Circuit consider the following factors in determining if severance is appropriate: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 502–03 (S.D.N.Y. 2013).  "Courts within this Circuit have stated that '[s]everence requires the presence of only one of these conditions.'"

*N. Jersey Media Grp. Inc. v. Fox News Network, LLC*, No. 14 Civ. 7630 (ER), 2015 WL 7313875, at *3 (S.D.N.Y. Nov. 20, 2015) (alteration in original) (quoting *Cestone v. Gen. Cigar Holdings, Inc.*, No. 00CIV3686RCCDF, 2002 WL 424654, at *2 (S.D.N.Y. Mar. 18, 2002)).  "However, these same courts have generally granted severance only after finding more than one of the conditions was met." *Id.*  Additionally, "[f]ederal courts view severance as a procedural device to be employed only in exceptional circumstances." *Kehr*, 596 F. Supp. 2d at 826 (quoting *Laureano v. Goord*, No. 06 Civ. 7845(SHS)(RLE), 2007 WL 2826649, at *8 (S.D.N.Y. Aug. 31, 2007)).  "Of paramount consideration is whether one of the parties to the litigation will suffer a substantial hardship as a result of either severance or joinder.  The Court must balance the factors of benefit and prejudice to arrive at both a fair and equitable conclusion." *Corporan v. City of Binghamton*, No. 05-CV-1340, 2006 WL 2970495, at *3 (N.D.N.Y. Oct. 16, 2006) (citing *Hendrickson Bros., Inc.*, 840 F.2d at 1082).

When ruling on a motion to sever, courts "must assume the truth of the allegations in the complaint." *Baergas v. City of New York*, No. 04CIV2944(BSJ)(HBP), 2005 WL 2105550, at *4 (S.D.N.Y. Sept. 1, 2005) (citing *In re Vitamins Antitrust Litig.*, No. MISC 99–197(TFH), 2000 WL 1475705, at *18 (D.D.C. May 9, 2000)).  Also, the party moving for severance bears the burden "to demonstrate that severance is needed to avoid prejudice or confusion and to promote the ends of justice." *Bey v. City of New York*, No. 99 Civ. 3873(LMM), 2009 WL 1911742, at *1 (S.D.N.Y. June 30, 2009) (citing *Lewis v. Triborough Bridge and Tunnel Auth.*, No. 97 CIV. 0607(PKL), 2000 WL 423517, at *2 (S.D.N.Y. Apr. 19, 2000)).

CCA argues that Plaintiff's claims against it should be severed because: (1) the claims do not arise from the same transaction or occurrence as the claims against CCS, Rapaport, and Miller (Doc. 83 at 4); (2) the "factual and legal commonalities between Plaintiff's claims against CCA and the [claims against the] Vermont Defendants are attenuated" (*id.* at 5); (3) trying the claims against CCA in Vermont "will not facilitate judicial economy," and there will be "little, if any[,] overlap in evidence" if the Court severs the claims (*id.* at 6); and (4) CCA will be prejudiced if the claims against it are not severed (*id.* at 7).  In response, Plaintiff asserts that the Court should not sever the claims against CCA because "CCA consented [to] Vermont law when it contracted with the Vermont Department of Corrections to house Vermont inmates" (Doc. 90 at 1), and "the nature of those claims is not isolated to occurrences in Arizona alone" (*id.* at 2).  I address these arguments below, considering the relevant factors on a motion to sever.

### A.      Same Transaction or Occurrence

First, CCA argues that "Plaintiff's claims against [it] arise out of transactions separate from its claims against Hutt's Vermont providers ('Vermont Defendants')." (Doc. 83 at 4.)  In response, Plaintiff contends that the events related to Hutt's medical care in Arizona and Vermont, and his subsequent death in Vermont "are all one continuum of events and supports 'logically related claims' which should be tried in a single proceeding, as directed under *Martinez* [*v. Robinson*, No. 99 CIV. 11911DABJCF, 2001 WL 498407 (S.D.N.Y. May 10, 2001)] and [*Blesedell v. Mobil Oil Co.*, 708 F. Supp. 1408 (S.D.N.Y. 1989)]."  (Doc. 90 at 3.)

Courts have analyzed the same-transaction-or-occurrence factor by reference to "'the use of the same term in Rule 13(a), applying to compulsory counterclaims.'" *Kalie v. Bank of Am. Corp.*, 297 F.R.D. 552, 557 (S.D.N.Y. 2013) (quoting *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 222, 228 (E.D.N.Y. 2013)).  In particular, courts examine the "logical relationship between the claims and determine 'whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Id.* (quoting *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979)); *see also Gerace v. Cliffstar Corp.*, No. 05–CV–65S, 2009 WL 5042621, at *2 (W.D.N.Y. Dec. 15, 2009) (discussing term "transaction" and stating "[t]he Supreme Court has characterized this word as one of flexible meaning that 'may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.'" (quoting *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926))).

Here, this factor supports severance of Plaintiff's claims against CCA because the claims are not "logically related" to Plaintiff's claims against CCS, Rapaport, and Miller. Rather, the "essential facts" that form the basis of Plaintiff's claims against CCA are "logically connected" to the claims brought in the District of Arizona against Ivens, Lanier, and Gonzalez.  (*See* Doc. 83-1.)  In fact, Plaintiff's claims against CCA and CCA employees—except for Plaintiff's assertions regarding the purported contract between CCA and the State of Vermont—arise entirely out of events occurring in Arizona.  (*See* Doc. 61 at 6–11, ¶¶ 15–40.)  The claims against CCA, Ivens, Lanier, and Gonzalez are therefore part of the same transaction or occurrence.  While Plaintiff argues that the events in Arizona and

Vermont are causally linked (Doc. 90 at 3), this court need not accept as true conclusory allegations regarding causation—i.e., "Mr. Hutt died on October 27, 2014 *as a direct result* of Defendants' willful violation of Mr. Hutt's civil rights." (Doc. 61 at 8, ¶ 23 (emphasis added).) *See Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 160 (S.D.N.Y. 2009) (stating in context of motion to sever that Plaintiff's statement was "a legal conclusion that, unlike Plaintiff's factual allegations, need not be accepted as true"). Consequently, the first factor weighs in favor of severing Plaintiff's claims against CCA.

**B.     Common Question of Law or Fact**

Second, CCA argues that "[t]he factual and legal commonalities between Plaintiff's claims against CCA and the Vermont Defendants are attenuated and do not warrant requiring CCA to defend itself alongside the Vermont Defendants." (Doc. 83 at 5.) Specifically, CCA states that "[t]he treatment Hutt received in Arizona is distinct from the treatment he received in Vermont," and "Arizona law applies to the claims arising out of Hutt's treatment in Arizona." (*Id.* (footnote omitted).) Plaintiff responds that "CCA's contractual relationship with the State of Vermont, its negligent supervision of the Arizona defendants, and its improper administration of care are elements of Plaintiff's claims against CCA which are not part of the medical malpractice claims against Iven[s], Lanier[,] and Gonzalez." (Doc. 90 at 4.)

According to Plaintiff's Second Amended Complaint (Doc. 61) and CCA's Exhibit 1 to its Motion to Sever (Doc. 83-1), Plaintiff's claims against CCA and CCA employees, and her claims against CCS, Rapaport, and Miller, may involve overlapping questions of law. (*See, e.g.*, Doc. 61 at 13, ¶ 55; Doc. 83-1 at 9, ¶ 36 (claiming cruel and unusual punishment

under Eighth Amendment).)  On the other hand, there will be very little, if any, overlap of questions of fact.  *See Corporan*, 2006 WL 2970495, at *4 (concluding second factor favored severance and stating, "although there may be a common question of law presented, there are no common questions of fact at issue here except for the common factual questions forming the basis of [one] incident").  Again, as noted above, Plaintiff's claims against CCA are, almost exclusively, grounded in events that occurred in Arizona and that involved CCA's employees at the Florence, Arizona facility.  By contrast, Plaintiff's claims against CCS, Rapaport, and Miller are based on events that took place in Vermont while Hutt was under their medical care.  Although Plaintiff's medical-malpractice claims against Ivens, Lanier, and Gonzalez do not necessarily share common *legal* elements with the claims against CCA, the underlying facts of those medical-malpractice claims are logically related to Plaintiff's tort, and perhaps constitutional, claims against CCA.  Therefore, the second factor also favors severance of Plaintiff's claims against CCA.

### C.    Judicial Economy and Overlap of Evidence

Third, CCA argues that "[a]llowing Plaintiff to proceed in Vermont with her claims against CCA will not facilitate judicial economy[—]especially where CCA's employees will be defending themselves against identical claims in the District of Arizona."  (Doc. 83 at 6.) Plaintiff responds that "[t]estimony and other evidence provided relative to treatment Mr. Hutt received in Arizona will be a necessary component of testimony and evidence provided by Vermont Defendants after his return to Vermont."  (Doc. 90 at 5.)  Plaintiff also contends that there will be different witnesses and proof with respect to the claims against CCA and the claims against Ivens, Lanier, and Gonzalez: "The administration of [CCA's]

contract with the State of Vermont, the fiscal decisions underlying care of inmates under its supervision[,] and . . . its negligent hiring and training practices are not a part of the medical malpractice claims against the Arizona defendants." (*Id.* at 6.)  Thus, Plaintiff states, "CCA must defend itself against other claims separate and apart from the malpractice claims." (*Id.*)

Though Plaintiff is correct that, in the District of Arizona, CCA may have to defend against claims that don't directly apply to Ivens, Lanier, and Gonzalez—such as Plaintiff's state-law claim of "negligent hiring, training[,] and supervision" (Doc. 61 at 15)—judicial economy favors severing the claims against it.  For instance, there is a greater likelihood of "cumulative presentation of evidence" if the claims against CCA remain in the District of Vermont, *see Gerace*, 2009 WL 5042621, at *1 (citing *Corporan*, 2006 WL 2970495, at *3), because, as CCA notes, Ivens, Lanier, and Gonzalez are "defending themselves against identical claims in the District of Arizona"  (Doc. 83 at 6).  By severing the claims against CCA, the bulk of the evidence presented in the District of Arizona will relate to events that took place in Arizona, while the majority of the evidence presented in the District of Vermont will relate to Vermont events.  The trials will not involve "*substantial* overlap of witnesses or documentary proof."  *See N. Jersey Media Grp. Inc.*, 2015 WL 7313875, at *5 (emphasis added) (quoting *Lewis*, 2000 WL 423517, at *4).  Therefore, the factors relating to judicial economy and overlap of evidence also weigh in favor of severance.

### D.     Prejudice

Fourth, CCA argues that it "will undoubtedly be prejudiced if Plaintiff's claims are not severed," stating that it "will be required to defend the same lawsuit in two states, on opposite sides of the country, in spite of the fact that the events underlying Plaintiff's claims against CCA arise out of events that occurred exclusively in Arizona." (Doc. 83 at 7.) Plaintiff maintains that "prejudice to CCA of litigating this case in Vermont is *de minimis* and arguably reflects more upon the inconvenience to its counsel than to witnesses, who have yet to be named, or to other parties only one of whom still resides in Arizona." (Doc. 90 at 5–6.)

Denying the Motion will result in prejudice to CCA. CCA would bear significant increased costs in defending two lawsuits, in two different jurisdictions, that concern practically the same claims. *See Lewis*, 2000 WL 423517, at *4 n. 3 (considering expense to party); *see also N. Jersey Media Grp. Inc.*, 2015 WL 7313875, at *7; *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 266 (D. Conn. 2012). Accordingly, this factor favors severance.

As is clear from the above analysis, all of the severance factors favor severing the claims against CCA. Most notable however is the prospect that absent severance, CCA and CCA employees will be compelled to litigate almost identical claims in different districts. This factor carries the greatest weight here. Therefore, I recommend that Defendant's Motion to Sever (Doc. 83) be GRANTED.

## II.    Motion for Transfer to the District of Arizona

Next, the Court must decide whether the claims against CCA should be transferred to the District of Arizona.  CCA argues that Plaintiff's claims against it should be transferred under 28 U.S.C. § 1404(a).  (Doc. 83 at 8.)  CCA maintains that the case could have been brought in the District of Arizona and that transfer is warranted based on factors that "promote[] convenience and justice."  (*Id.*)  In opposition, Plaintiff argues that because CCA "has failed to demonstrate that the criteria weigh in its favor, the case should remain in Vermont."  (Doc. 90 at 6.)  Plaintiff also states that "[t]he transfer to Arizona would be inherently unfair to Plaintiff, [would] have no impact on judicial efficiency[,] and would severely undermine the interests of justice."  (*Id.*)

Title 28 U.S.C. § 1404(a) states as follows: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  In determining whether to transfer venue pursuant to this statute, "district courts engage in a two-part inquiry, asking: (1) whether an action 'might have been brought' in the proposed transferee forum, and, if so, (2) whether the transfer promotes convenience and justice."  *Costello*, 888 F. Supp. 2d at 266.  To answer the second part of the inquiry, courts evaluate the following factors:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the

relative means of the parties, (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Id.* at 267.

"The moving party 'carries the "burden of making out a strong case for transfer."'" *Tulepan v. Roberts*, No. 14–cv–8716 (KBF), 2014 WL 6808313, at *1 (S.D.N.Y. Dec. 3, 2014) (quoting *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010)).  When a court is deciding whether to grant a party's motion to transfer, it "'may consider material outside of the pleadings.'"  *Id.* at *1 n.1 (quoting *Mohsen v. Morgan Stanley & Co. Inc.*, No. 11 Civ. 6751(PGG), 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013)).

### A.    Whether Claims Could Have Been Brought in the District of Arizona

Applying the first prong of the § 1404(a) analysis, CCA argues that "because the events underlying Plaintiff's claims against CCA occurred in Arizona . . . , Plaintiff cannot dispute that she could have brought this action in the District of Arizona."  (Doc. 83 at 8.) Plaintiff does not dispute this claim and instead focuses on step two of the analysis (*see* Doc. 90 at 8–9), which will be discussed in the next section.

The claims against CCA could have been brought in Arizona.  "In assessing whether an action 'might have been brought' in the proposed transferee forum, the court must determine whether the defendants were subject to personal jurisdiction in that forum when the action was commenced and whether venue would properly lie there."  *MAK Mktg., Inc. v. Kalapos*, 620 F. Supp. 2d 295, 307–08 (D. Conn. 2009).  The District of Arizona would have had personal jurisdiction over CCA when the suit was initiated in Vermont because

Plaintiff's claims against CCA arose out of events occurring in Arizona. *See Shaw Family Archives, Ltd. v. CMG Worldwide, Inc.*, 434 F. Supp. 2d 203, 208–09 (S.D.N.Y. 2006) ("[P]ersonal jurisdiction may also be based on specific jurisdiction: when litigation arises out of the defendant's tortious conduct within or 'purposefully directed' at the forum state." (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985))). Additionally, "a substantial part of the events" that gave rise to Plaintiff's claims against CCA arose in Arizona. *See* 28 U.S.C. § 1391(b) ("A civil action may be brought in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ."). Thus, CCA has met the first prong of the § 1404(a) test.

## B.      Promotion of Convenience and Justice

Next, the Court must evaluate each of the factors enumerated above in order to determine whether transferring the claims against CCA promotes convenience and justice.[1]

### 1.      Plaintiff's Choice of Forum

First, Defendant argues that Plaintiff's choice of Vermont as the forum for this case is a neutral consideration due to her decision to file a second suit in Arizona. (Doc. 83 at 8–9 (citing Doc. 78).) Plaintiff contends that "Vermont is the most appropriate forum to litigate constitutional violations arising out of a Vermont inmate's incarceration." (Doc. 90 at 9.) Plaintiff further states that "CCA consented to Vermont jurisdiction when it made the

---

[1] Previously in this case, the court conducted a cursory sua sponte analysis regarding transferring Plaintiff's claims against Ivens, Lanier, and Gonzalez, before ultimately deciding to recommend dismissal of those claims. (*See* Doc. 63 (Report and Recommendation regarding Doc. 27); *see also* Doc. 68 (Opinion and Order adopting Doc. 63).) Although the court's reasoning on that issue is also applicable to CCA here, a full analysis of each factor is still necessary, given recent developments in this case, including Plaintiff's filing of the second suit in Arizona (*see* Doc. 83-1) and the court's recent Report and Recommendation recommending dismissal of Plaintiff's claims against Pallito (*see* Doc. 91).

business decision to engage with Vermont to house and take care of Vermont inmates and send them to Arizona, 1,600 miles away." (*Id.*)

"[A] district court ordinarily affords the plaintiff's choice of forum substantial weight. [But] [w]hen plaintiffs choose a forum that is not any plaintiff's home forum, that choice of forum is accorded considerably less weight." *Costello*, 888 F. Supp. 2d at 267 (citation omitted). Here, Plaintiff filed suit against CCA in Vermont, which is Plaintiff's "home forum." Thus, I conclude that this factor weighs against transfer.

### 2.     Convenience of Witnesses and Availability of Process to Compel Witnesses to Attend

Second, CCA argues that "Plaintiff will be unable to compel attendance at trial of the three primary witnesses to the medical treatment Hutt received at [Florence Correctional Center (FCC)]. Moreover, any outside providers who treated Hutt while he was incarcerated at FCC are also in Arizona." (Doc. 83 at 9.) In response, Plaintiff states that CCA has not provided an affidavit with potential witnesses and information about their testimony. (Doc. 90 at 10.) Plaintiff also points to CCA's option to depose witnesses who cannot travel to Vermont. (*Id.*) Plaintiff adds that "there will be numerous witnesses in Vermont and New Hampshire," and "the majority of evidence" will be in those two states rather than Arizona. (*Id.*)

"A party moving for transfer on the ground of the convenience or availability of witnesses must specify the identity of key witnesses and the nature of their likely testimony, and support these statements with affidavits." *Costello*, 888 F. Supp. 2d at 267. However, not every court has required such specificity. One district court explained: "[T]he Court is obliged to exercise some common sense in the matter rather than simply to apply

mechanically a supposed requirement of names of witnesses and summaries of testimony."
*Schechter v. Tauck Tours, Inc.*, 17 F. Supp. 2d 255, 261 (S.D.N.Y. 1998).

Here, I conclude that witness convenience and subpoena power weigh in favor of transfer. Preliminarily, common sense dictates that the District of Arizona would be more convenient for yet-to-be-named witnesses from the Florence facility. *See id.* Although the District of Arizona is not necessarily more convenient for at least two of the three individuals who CCA identifies as potential witnesses, those individuals are also named defendants in Plaintiff's current Arizona suit.[2] By contrast, Vermont would not be a more convenient forum for the three individuals named in the Arizona suit.

Regarding CCA's argument concerning subpoena power, CCA has not identified a non-party witness whose attendance would need to be compelled. *See Aronstein v. Thompson Creek Metals Co.*, No. 3:14–cv–00201 (MPS), 2015 WL 235186, at *5 (D. Conn. Jan. 16, 2015) ("Because neither party argues that it will need to compel non-party witnesses, this factor is neutral."). But the District of Arizona at least would have the power to compel the attendance of potential Florence facility witnesses. In contrast, the District of Vermont likely would not have the ability to compel the attendance of Lanier, Ivens, Gonzalez, or any Arizona-based witness from CCA's Florence facility. *See* Fed. R. Civ. P. 45(c)(1) ("A subpoena may command a person to attend a trial, hearing, or deposition only

---

[2] Previous filings with the court reveal that Keith Ivens now lives in Nashville, Tennessee (Doc. 27-1 at 1); Teresa Lanier splits her time between Oregon and Arizona but refers to Arizona as her "home base" (Doc. 27-2 at 1); and Iman Arroyo (formerly Iman Gonzalez) now lives in Texas (Doc. 27-3 at 1). The court may consider these previous filings in the context of the instant Motion to Transfer. *See Tulepan*, 2014 WL 6808313, at *1 n.1 ("'In deciding a motion to transfer, a court may consider material outside of the pleadings.'" (quoting *Mohsen*, 2013 WL 5312525, at *3)).

as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person [if certain conditions are met] . . . .”). Consequently, I conclude that the two above-mentioned factors favor transfer to the District of Arizona.

### 3.    Location of Relevant Documents

CCA argues that “the majority of relevant documentation, including documents associated with treatment Hutt received from outside providers, is located in Arizona.” (Doc. 83 at 9.)  However, CCA concedes that this factor may be a neutral consideration due to electronic records.  (*Id.*)  Plaintiff asserts that all relevant records were also held by the DOC due to a contractual obligation between CCA and Pallito.  (Doc. 90 at 10.)

As noted in the Court's most recent Report and Recommendation in this case, there is no copy of the contract in the record, and Plaintiff's contractual argument is therefore unsubstantiated.  (*See* Doc. 91 at 5 n.5.)  On the other hand, the fact that most relevant documents are located in Arizona is only given a little weight: “Although the location of relevant documents is entitled to some weight, modern photocopying technology and electronic storage deprive this issue of practical or legal weight.”  *Aronstein*, 2015 WL 235186, at *5 (quoting *Charter Oak Fire Ins. Co. v. Broan–Nutone, L.L.C.*, 294 F. Supp. 2d 218, 221 (D. Conn. 2003)).  Thus, I find that this factor favors transfer only slightly.

### 4.    Convenience of Parties

CCA argues that Plaintiff's second suit now pending in Arizona “obviates any argument she may have as to inconvenience,” whereas CCA “is now in the position of

having to defend itself in Vermont and its employees in Arizona." (Doc. 83 at 9.) In response, Plaintiff contends that "CCA is headquartered in Nashville, Tennessee," and "[o]nly one of the three individual Defendants remain[s] in Arizona." (Doc. 90 at 11.) Plaintiff maintains that "[t]here is no convenience to the parties to have the matter transferred to Arizona." (*Id.*) I disagree and conclude that this factor weighs in favor of transfer. It will be more convenient for CCA to defend itself in one lawsuit in Arizona, where Plaintiff has already filed a second lawsuit, rather than defend its employees in one lawsuit in Arizona and itself in another lawsuit in Vermont.

### 5.  Locus of Operative Facts

CCA argues that the next factor—locus of operative facts—favors transfer because "Plaintiff's claims against CCA arise out of Hutt's incarceration and medical treatment at FCC in Arizona." (Doc. 83 at 10.) Plaintiff responds that Vermont is "[t]he factual center of the case," "the source of the contract," and "the source of the controlling standards for the care and treatment of Vermont inmates." (Doc. 90 at 11.)

"To determine the locus of operative facts, courts look to where 'the events from which the claim arises' occurred." *Costello*, 888 F. Supp. 2d at 268 (quoting *Verilux v. Ottlite Techs.*, Civil Action No. 09–CV–00717 (JCH), 2009 WL 2710222, at *5 (D. Conn. Aug. 20, 2009)). As discussed above regarding the "same-transaction-or-occurrence" factor for severance, *see supra* pp. 6–8, the facts that form the basis of Plaintiff's claims against CCA arose from events that took place in Arizona. Thus, this factor strongly favors transfer.

### 6.      The Relative Means of the Parties

The next factor of the analysis is the relative means of the parties.  CCA argues that

this factor is a neutral one, given Plaintiff's filing of the second lawsuit in Arizona, and

states that transfer to Arizona "would not create an additional undue burden for Plaintiff,

who has voluntarily assumed the burden of litigating her claims in two districts."

(Doc. 83 at 10.)  In response, Plaintiff asserts that CCA failed to provide information about

its finances and is not prejudiced by defending itself in Vermont.  (Doc. 90 at 12.)

Given the pendency of the second lawsuit in the District of Arizona, Plaintiff would

incur minimal additional burden as a result of a transfer.  Accordingly, this factor does not

weigh in favor of either party in the transfer analysis.

### 7.      Forum's Familiarity with the Governing Law

Regarding the next factor—the forum's familiarity with the governing law—CCA

argues that "[w]ith respect to the federal claims, this factor is neutral because federal courts

are presumed to be equally familiar with federal law."  (Doc. 83 at 10.)  However, with

respect to the state-law claims, CCA asserts that this factor favors transferring the claims

against it because federal courts are "presumed to be more familiar with the law of the state

in which they sit," and Arizona, not Vermont, law applies to the state-law claims against

CCA.  (*Id.* at 10–11.)  Plaintiff responds that Vermont law applies because "[t]he contract

required CCA and its employees to provide care to Mr. Hutt in accordance with the

prevailing medical standards, 28 V.S.A. § 801."  (Doc. 90 at 13.)  In addition, Plaintiff

asserts that CCA acted "as the de facto Vermont Department of Corrections," and

consequently, under the Restatement (Second) of Conflicts of Laws, CCA has "the most significant relationship with Vermont, not Arizona." (*Id.*)

I agree that the law of Arizona applies to Plaintiff's state-law claims. As CCA notes in its Motion, both Vermont and Arizona follow "the Restatement (Second) of Conflicts approach to choice-of-law questions in tort actions." *Martineau v. Guertin*, 170 Vt. 415, 417, 751 A.2d 776, 778 (2000); *see also Jackson v. Chandler*, 204 Ariz. 135, 136, ¶ 5, 61 P.3d 17, 18 (2003); *Pounders v. Enserch E & C, Inc.*, 232 Ariz. 352, 354, ¶ 9, 306 P.3d 9, 11 (2013) ("Arizona follows the Second Restatement." (citing *Jackson*, 61 P.3d at 18)). (*See* Doc. 83 at 5.) Under the Restatement, when a tort claim involves personal injury, "the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6." Restatement (Second) of Conflict of Laws § 146 (1971). The same principle applies for wrongful death claims. *Id.* § 175. Moreover, a comment to section 175 states, "The place where the injury occurs is the place where the force set in motion by the actor first takes effect on the person. This place is not necessarily that where the death occurs." *Id.* § 175 cmt. b.

Here, the claims against CCA are based on alleged injuries that occurred in Arizona, and no other state has a more significant relationship to those alleged injuries. *See id.* § 6 (listing policy and other factors to consider when determining choice of law). In addition, it appears from the Second Amended Complaint that Plaintiff is claiming that Hutt's death was "set in motion," *id.* § 175 cmt. b, in Arizona by CCA and the three individuals who

20

were responsible for Hutt's medical care there (*see* Doc. 61 at 8, ¶ 23).  Consequently, this factor also favors transfer.

### 8.  Trial Efficiency and the Interests of Justice

CCA argues that "it would be more efficient for CCA to defend all claims against it and its employees in the same forum, which would allow pretrial discovery to be streamlined and would prevent the duplication of litigation efforts, thus saving time and money."  (Doc. 83 at 11.)  Plaintiff responds by stating that "[t]he most expedient process for the two trials will be to keep the two inmate custodians in the same Vermont trial and allow the three Arizona health workers to proceed in Arizona. . . .  Any additional Defendants moved to Arizona would only serve to delay the resolution of the Arizona case and have no impact on the Vermont case . . . ."  (Doc. 90 at 14.)

Considerations of efficiency and justice support transfer.  Because of the second lawsuit now pending in the District of Arizona against former and current CCA employees (*see* Docs. 27-1, 27-2, 27-3 (Affidavits of Ivens, Lanier, and Arroyo (formerly Gonzalez))), transfer of Plaintiff's claims to the District of Arizona will increase efficiency.  Furthermore, the interests of justice will be better served by transfer because of the interrelated nature of the claims against CCA and its employees (current and former), and because CCA will not have to participate in two suits with nearly identical claims.  Plaintiff decided to file the second lawsuit in Arizona, and now Plaintiff must accept the consequences of that choice.  Accordingly, the trial-efficiency and interest-of-justice factor supports transfer of Plaintiff's claims against CCA to the District of Arizona.

For these reasons, I recommend that CCA's Motion to Transfer the claims against it to the District of Arizona be GRANTED.

## Conclusion

As discussed above, the factors governing severance and transfer weigh in favor of severing Plaintiff's claims against CCA and transferring those claims to the District of Arizona where Plaintiff has filed suit against the CCA employees.

For the foregoing reasons, I recommend that CCA's Motion to Sever Claims and Transfer Venue (Doc. 83) be GRANTED.

Dated at Burlington, in the District of Vermont, this 26th day of January, 2016.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).